IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICHOLAS WARD,

      Plaintiff,                                         Case No. 1:24-cv-946-JMC-JMR

v.

INTERNATIONAL ALLIANCE OF
THEATRICAL STAGEEMPLOYEES, IATSE LOCAL 480,
HAILEY ROY,

      Defendants.

## **ORDER DENYING PLAINTIFF'S MOTION TO AMEND JUDGMENT**

On March 26, 2025, the Court granted in part and denied in part Defendant Hailey Roy's motion to dismiss. Doc. No. 46. On April 22, 2025, Plaintiff moved to amend the Court's judgment as to count 6, which alleged defamation against Defendant Roy. Doc. No. 49 ("Plaintiff's Mot.").[1] The Court reasoned that because "[a]ll the statements Plaintiff allege[d] [were] defamatory occurred in the charging affidavit Roy made with the Local, the complaint she filed in New Mexico state court, or her testimony at the Local's disciplinary trial", and New Mexico law "prohibits defamation claims based on statements made in a civil complaint or at a judicial or administrative hearing," Plaintiff's claim failed as a matter of law. Doc. No. 46 at 26–27 (citing *Helena Chem. Co. v. Uribe*, 281 P.3d 237, 241 (N.M. 2012); *Chavez-Neal v. Kennedy*, 485 P.3d 811, 814 (N.M. Ct. App. 2021)).

Plaintiff stumbles from the outset because he moved to amend the Court's judgment under Federal Rule of Civil Procedure 59(e). Plaintiff's Mot. at 1. The Court has not yet entered

---

[1] The order also granted in part and denied in part other defendants' motions to dismiss for counts 1–5, but Plaintiff does not seek to alter the judgment for those counts. Plaintiff's Mot. at 1.

judgment, as its order merely partially dismissed some of Plaintiff's complaint's counts. Fed. R. Civ. P. 54(b) ("any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties . . ."). Rather than simply deny the motion on that basis, the Court instead construes Plaintiff's motion as one for reconsideration. Reconsideration is appropriate "where the court has misapprehended the facts, a party's position, or the controlling law." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

Plaintiff argues the Court both misinterpreted his complaint and misapplied the relevant law in dismissing his defamation claim. He contends he "allege[d] that Roy's allegations were communicated to both the Local's president, and its business agent, more than one week before Roy filed charges, and that those two union officers were so well apprised of the matter that they confronted [Plaintiff] . . . and urged him not to contest the allegations, admonishing that they would refuse to testify if he did." Plaintiff's Mot. at 3 (citing Second Am. Comp. ¶¶ 32–34). He also points to his allegations that "before Roy filed her charges, she contacted Local officers to communicate her allegations and declare her intent to sue the Local," which he argues "clearly falls outside the ambit of intra-union proceedings, and was intended to improperly influence those proceedings." *Id.* Therefore, Plaintiff claims, Roy should not have absolute immunity for her statements.

Plaintiff mischaracterizes the Court's order. Although Plaintiff argues the Court credited only the "statements made 'in the charging affidavit… the complaint [Roy] filed in New Mexico state court, or her testimony at the Local's disciplinary trial'" when considering his defamation count, the order went beyond that. Plaintiff's Mot. at 4. The order mentioned other statements

Plaintiff alleged were defamatory, such as instances "in which others read the statements Roy made in her charging affidavit at Local general members' meetings and an executive board meeting." Doc. No. 46 at 27 n.8. As the order explained, "in those instances the relevant parties still read only from the charging affidavit, for which Roy has absolute immunity." *Id.* The Court rejected Plaintiff's argument that these and other statements "should not be given absolute immunity because they did not occur during a judicial or administrative hearing." *Id.*

Plaintiff now makes a similar argument, and in so doing misconstrues the absolute immunity privilege's extent. The allegations Plaintiff's motion cites do not contain any specific statements Roy made, instead stating, for example, that "[o]n Jan. 2, 2024, Day approached Roy about the porn issue and told Roy that it had been brought to her attention by [Plaintiff]. On Jan. 5, 2024, [Plaintiff] received a call from Evans, saying we have to meet. That day, Mr. Ward met Evans and O'Malley at Flying Star restaurant on Corrales Road in Albuquerque." Second Am. Comp. ¶¶ 32–33. These and other allegations Plaintiff cites merely describe the events that led to the disciplinary proceeding against him and the appeal to the union's president, indicating only that Roy told various members of the union responsible for the disciplinary process the allegations that eventually made it into her charging affidavit and discussed them with the union's president. Second Am. Comp. ¶¶ 37, 90. Contrary to Plaintiff's implication, New Mexico's absolute immunity doctrine protects even against pre-litigation and pre-proceeding statements like these. *Helena Chem. Co.*, 281 P.3d at 242–43. Indeed,

> [i]t is not absolutely essential, in order to obtain the benefits of absolute privilege, that the language claimed to be defamatory be spoken in open court or contained in a pleading, brief, or affidavit . . . If the alleged defamatory statement is made to achieve the objects of the litigation, the absolute privilege applies even though the statement is made outside the courtroom and no function of the court or its officers is invoked.

*Gregory Rockhouse Ranch, L.L.C. v. Glenn's Water Well Serv., Inc.*, 191 P.3d 548, 554 (N.M. Ct. App. 2008) (quoting *Romero v. Prince*, 513 P.2d 717, 720 (N.M. Ct. App. 1973)).  In *Helena Chemical Company*, New Mexico's Supreme Court applied absolute immunity to statements the plaintiffs made during a press conference they held after they filed a lawsuit against the defendant. 281 P.3d at 246.  The Supreme Court reasoned that the plaintiffs' statements described the basis for their suit, and were therefore entitled to absolute privilege even though they occurred outside the courtroom. *Id.* at 246–47.  The same logic applies here.  Plaintiff alleges that Roy told others about Plaintiff's alleged harassment against her, which was the disciplinary proceeding's subject. Plaintiff's Mot. at 3–4.  Roy had to communicate her allegations against Plaintiff to various union officials to initiate intraunion disciplinary proceedings against him, and therefore receives absolute immunity for those statements.  *Cf. Hasten v. Phillips Petroleum Co.*, 640 F.2d 274, 276–77 (10th Cir. 1981) (applying absolute privilege to statements made in a discharge letter that later became the basis for a labor-management grievance hearing).

The other allegations Plaintiff cites do not state a defamation claim either.  He alleges, for example, that Roy "contacted Local officers to . . . declare her intent to sue the Local," and that another Local member "placed a call to [Plaintiff]'s representative, David Grace, apparently on Roy's behalf, for the purpose of intimidating Mr. Grace and dissuading him from representing [Plaintiff] in the union trial."  Plaintiff's Mot. at 3 (citing Second Am. Comp. ¶¶ 37, 74–76).  The Court cannot determine whether Plaintiff believes these allegations constitute defamation themselves or if he mentions them as evidence that Roy made her allegedly defamatory statements outside her charging affidavit and the intraunion disciplinary proceeding.  If the latter, his argument that absolute immunity applies only to the words Roy said at the union trial and in her affidavit is incorrect for the reasons stated above.  If the former, the Court fails to see how such

actions constitute "a wrongful and unprivileged injury to [Plaintiff]'s reputation" necessary for defamation. *Hagebak v. Stone*, 61 P.3d 201, 203–04 (N.M. Ct. App. 2002). Whatever legal effect threatening Plaintiff or threatening to sue the Local because of Plaintiff's actions might have, neither allegation mentions any words that could reasonably undercut Plaintiff's reputation.

Plaintiff also argues that the entire premise of the Court's holding was erroneous. The Court, interpreting state law, predicted that the New Mexico Supreme Court would extend its absolute immunity bar on defamatory statements made in administrative hearings to union disciplinary hearings. Doc. No. 46 at 27 n.9. In so doing, the Court cited for persuasive value *Gen. Motors Corp. v. Mendicki*, 367 F.2d 66, 70–71 (10th Cir. 1966), which similarly applied absolute immunity to a non-governmental collective bargaining session in which one party made defamatory claims comparable to those Plaintiff alleges Roy made. Plaintiff contends that comparison was specious, distinguishing the case's facts and stating that "[t]he holding conflates two very different sets of 'broader labor law principles.'" Plaintiff's Mot. at 6 (quoting ECF No. 46 at 27 n. 9). Namely, "'the declared policy' of the [Labor Management Relations Act ("LMRA")] to encourage collective bargaining (as set forth at 29 U.S.C. § 171), is nowhere at issue in this case," and "the declared policy of the [Labor Management Reporting and Disclosure Act ("LMRDA")] is 'to eliminate or prevent improper practices on the part of labor organizations'" like the Local's handling of Roy's allegations. *Id.* (quoting 29 U.S.C. § 401(c)). The Court's reliance on the decision, therefore, "stretches *Mendicki* beyond its narrow limits, with no support from the plain text of that case, the specific act of Congress it was concerned with, or from any other precedent." *Id.*

Plaintiff's attempts to distinguish the policies at play in the LMRA and LMRDA are unpersuasive. His argument that "[t]he interest in frank and unfettered speech in the course of

collective bargaining between unions and employers is patently not an interest that the LMRDA . . . is concerned with" completely misses the thrust of the order's reasoning. *Id.* Plaintiff is correct that the LMRA and LMRDA are distinct statutes with distinct focuses: the LMRA governs unions' relationships with management, while the LMRDA governs unions' relationships with their members. But each promotes a similar free-speech goal. Just as the LMRA reflects a congressional desire to encourage "frankness in labor disputes" through free speech during collective bargaining sessions, *Hasten*, 640 F.2d at 276, the LMRDA expresses Congress's judgment that our country's union "[m]embers' free speech rights are . . . a necessary means for the 'improvement or preservation of democracy within the union,'" *Aircraft Mechanics Fraternal Ass'n v. Transp. Workers Union of Am., Loc. 514, Air Transp. Div.*, 98 F.3d 597, 600 (10th Cir. 1996) (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 326 (1989)). Union disciplinary trials, just like collective bargaining sessions, court proceedings, and administrative hearings, would not be effective if the accused party could sue the accusing one after the trial for defamation based on the proceeding's subject matter. The free speech principles Congress articulated in the LMRDA support applying New Mexico's state law absolute immunity privilege to union disciplinary hearings, just as the LMRA's free speech principles supported applying absolute immunity privilege to collective bargaining negotiations. *Mendicki*, 367 F.2d at 70–71.

Plaintiff claims this "dramatic rewriting of New Mexico law" inappropriately substituted federal for state law. Plaintiff's Mot. at 6, 7–9. Reciting the well-known Erie doctrine rule that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state," Plaintiff argues that the Court's order violated this requirement by creating novel state common law based on an inaccurate federal preemption. *Id.* at 7 (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). He believes the order held that the

LMRDA's free-speech protections preempted state defamation law, which he contends was an error because "the Supreme Court found that a similar free speech provision under the LMRA . . . did not preempt state law defamation liability, so long as the defamatory statements are alleged, as here, to have been made with actual malice." *Id.* at 7 (citing *Linn v. United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 62–63 (1966)). Consequently, as "[a]bsolutely nothing in the LMRDA, in the Congressional record on the LMRDA, in New Mexico law, or in any federal case, suggests that a union member falsely *and maliciously* accused of serious sexual misconduct by a union officer must stand by and suffer the destruction of his reputation and livelihood with no recourse under the defamation law of his state," he argues the Court should reconsider its prior order. *Id.* at 9.

This argument completely misunderstands both the Court's decision and the Erie doctrine itself. The Court's order did not, as Plaintiff suggests, hold that federal labor law preempted state law on this point. As the Court specifically said, "*New Mexico law* protects [Roy's] statements 'even if false and malicious'" because of the absolute immunity doctrine. ECF No. 46 at 27 (quoting *Chavez-Neal*, 485 P.3d at 814) (emphasis added). The Court left no doubt that it based its decision on a prediction of how New Mexico courts would rule on the issue and looked to federal labor law only for persuasive effect. This is no different than a district court sitting in diversity hearing a free speech based in state law looking to jurisprudence on the United States Constitution's First Amendment to inform its decision. *Mendicki* addressed absolute privilege in a similar, albeit distinct, labor-union context, and was relevant persuasive precedent on which the Court reasonably relied to inform its decision. Doing so does not violate the Erie doctrine. Contrary to Plaintiff's position, federal courts sitting in diversity must frequently make decisions based on state law that lack on-point precedent. *See, e.g., Royal Maccabees Life Ins. Co. v. Choren*,

393 F.3d 1175, 1183 (10th Cir. 2005).  In such cases, the federal court must predict what the state's

highest court would do.  *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (quoting

*Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).  The Court did so in its

order, relying on relevant federal law for persuasive effect.

      Plaintiff's arguments merely disagree with the Court's prior decision.  But "motion[s] for

reconsideration . . . are inappropriate vehicles to reargue an issue previously addressed by the

[C]ourt when the motion merely advances new arguments, or supporting facts which were

available at the time of the original motion." *Servants of Paraclete*, 204 F.3d at 1012.  This motion

to amend the judgment, which the Court construes as a motion for reconsideration, does just that.

The Court therefore DENIES Plaintiff's motion.

      IT IS SO ORDERED.


              /s/ Joel M. Carson III
              Joel M. Carson III
              United States Circuit Judge
              Sitting by Designation